CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
August 07, 2024
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| TIMOTHY BURKE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:23-CV-00055 |
| v. | ) | |
| | ) | |
| KEVIN PUNTURI, et al., | ) | By: Hon. Robert S. Ballou |
| | ) | United States District Judge |
| Defendants. | ) | |

## MEMORANDUM OPINION

Defendants Kevin Punturi and VitalCore Health Strategies, LLC ("VitalCore")[1] separately move to dismiss this action arguing that Burke has not sufficiently shown their direct involvement in the alleged unconstitutional and tortious conduct. I agree as to Punturi and **GRANT** his motion (Dkt. 18). VitalCore's motion is **GRANTED** as to Burke's claims under 18 U.S.C. § 1983. However, VitalCore's motion is **DENIED** as to Burke's claim for negligence and medical malpractice as he has adequately alleged a claim against VitalCore under the doctrine of *respondeat superior*.

### I.    Background

Plaintiff Timothy Burke alleges that Defendants failed to provide adequate care for his numerous medical issues while he was incarcerated at Coffeewood Correctional Center ("Coffewood") and later Greensville Correctional Center ("Greensville"). He asserts that Defendants' "deliberate indifference" to his medical problems violated the Eighth Amendment and constituted negligence and medical malpractice.

---

[1] Plaintiff Timothy Burke has also named as defendants Rajvinder Mann, Jalal Taslimi, Vincent Gore, Luong, and N. Blankenship. These Defendants have not moved to dismiss Burke's claims.

1

In 2022, Burke had emergency surgery to remove his ruptured spleen and repair his lacerated liver. Compl. ¶ 17. In September 2022, Burke met with Rajvinder Mann, a physician at Coffeewood Correctional Center ("Coffeewood"), to arrange a follow up appointment with his surgeon. *Id.* ¶ 18. Burke alleges that he also wanted to speak to his surgeon about repairing a hernia that the surgical team had identified during his abdominal surgery. *Id.* Mann denied the request. *Id.* ¶¶ 19–20.

On September 15, 2022, Burke submitted an "emergency grievance" because "he was suffering from severe abdominal pain, bloating, and chest pain, and his requests to see medical for these issues were being ignored." Burke alleges that he submitted another "sick call request to medical" on September 17, 2022, but was not seen by Defendant Mann until October 19, 2022. *Id.* ¶¶ 21–25. Defendant Mann referred Burke to Dr. Gloudeman, a Surgeon at University of Virginia Health Hospital ("UVA Health"). *Id.* ¶ 26

Burke saw Dr. Gloudeman on November 1, 2022. *Id.* ¶ 27. Dr. Gloudeman told Burke he believed that some gauze or object was left inside of his body during the surgery and scheduled him for a CT scan. *Id.* ¶¶ 29–32. The CT scan was conducted on November 22, 2022. On November 28, Plaintiff received a "pink form" signed by Defendant Mann stating that the "CT scan was negative, and Dr. Gloudeman did not want a follow up with" Burke. *Id.* ¶ 35.

On December 4, 2022, Plaintiff received a copy of the results of his CT scan. *Id.* ¶ 36. The results revealed that Burke's CT scans "were not negative and that Dr. Gloudeman wanted a follow up appointment with Plaintiff." *Id.* The CT scan also revealed "3 lesions on Plaintiff's liver, pancreatic fluid collection, [] postoperative fluid where his spleen was removed, defects in his spine and a fat containing periumbilical hernia." *Id.* Burke alleges that Defendant Man was

2

"shocked and embarrassed that Plaintiff had discovered" that the "pink form" was false and ordered a follow up appointment with Dr. Gloudeman. *Id.* ¶¶ 37–39.

Burke's appointment with Dr. Gloudeman was initially scheduled for December 20, 2022. However, the officers transporting Burke to the doctor's office were late, and Dr. Gloudeman was forced to reschedule the appointment. *Id.* ¶¶ 40–41. On December 28, 2022, Burke began experiencing rectal bleeding because of changes to his medication. *Id.* ¶ 53. In response, Dr. Jalal Taslimi, another physician at Coffeewood, granted permission to "have extra toilet paper for a period of 6 months." *Id.* ¶ 53.

Burke ultimately saw Dr. Gloudeman on January 5, 2023. After the appointment, the doctor ordered additional testing. *Id.* ¶¶ 46–47. On February 22, Dr. Gloudeman ordered a series of additional medical interventions including, among other things, an "endoscopy and/or colonoscopy to check for cancer due to Plaintiff's abdominal pain and bloating, and rectal bleeding" and a "ten-pound weight restriction." *Id.* ¶¶ 49–52. Burke alleges that he was never told about the ten-pound weight restriction and as a result suffered an additional hernia. *Id.*

On March 6, 2023, Burke alleges that he visited Taslimi in the prison medical unit who concluded that Burke had cysts on his liver and that the rib and cartilage at his eighth left rib had separated. *Id.* ¶ 54. On April 18, 2023, Burke was informed that his endoscopy/colonoscopy would be rescheduled because he'd failed to follow a "liquid only diet." Burke alleges that no one told him he needed to follow a liquid only diet, and that he was served a regular diet by Coffeewood food services. *Id.* ¶¶ 56–57.

Burke asserts that Coffeewood officials repeatedly ignored his complaints of "intense foot pain" for several months, and when he eventually saw a foot doctor, he was diagnosed with bilateral plantar fasciitis and bone grinding, prescribed medical shoes, and referred to an

orthopedic surgeon. *Id.* ¶¶ 63–65, 67–69. Burke alleges that it took almost two months to see the surgeon, and, when he did, the surgeon ordered him to be placed in a wheelchair and recommended surgery. *Id.* ¶¶ 73–74.

Burke was transferred to Greensville on or around June 15, 2023. *Id.* ¶ 1. Burke alleges that Greensville medical personnel, including Defendants Gore, Blankenship, and Luong ("Greensville Defendants"), have continued to deny him treatment. *Id.* ¶ 79. At the time the Complaint was filed, Burke reported that Greensville medical personnel had not taken any of the actions prescribed by Dr. Gloudeman or his orthopedic surgeon. *Id*. at 61 Neither his endoscopy/colonoscopy nor his foot surgery has been scheduled. *Id.* ¶¶ 59, 61, 76. And, Burke alleges that, since his transfer, he has been denied ice treatment for his rectal bleeding. *Id.* ¶ 53. Burke alleges that he has "properly presented grievances for all of the medical issues in this Complaint, and they have been ignored." *Id.* ¶ 79.

### A. Allegations related to Defendant Punturi

Punturi is the warden of Greensville Correctional Center. *Id.* ¶ 2. Burke alleges that,

> Prison wardens such as Defendant Punturi have many duties and responsibilities, including but not limited to ensuring that the correctional facility is safe for inmates, determining training standards for the correction officers and other staff including medical staff, and providing appropriate medical care for inmates such as Plaintiff.

*Id.*

### B. Allegations related to Defendant Vital Core

Vital Core "is a medical contractor for the Virginia Department of Corrections ("VDOC")." *Id.* ¶ 3. Prior to May 25, 2023, all healthcare providers working in Coffeewood Correction Center, including Drs. Mann and Taslimi, were employed by Vital Core. *Id.* ¶¶ 4–5. Vital Core is also the current "medical contractor for Greensville Correctional Center" and

4

employs the Greensville Defendants. *Id.* ¶¶ 6–8. Plaintiff alleges that Vital Core was "responsible for training the medical providers." *Id.* ¶ 3.

### C. Procedural History

Burke filed this Complaint on October 22, 2023. Dkt. 1. Defendants Punturi and Vital Core filed separate motions to dismiss on December 21, 2023 and January 30, 2024, respectively. Dkt. 18, 31. The parties waived a hearing on the pending motions. Dkt. 43.

## II. Analysis

Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter. . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556 (noting that while detailed factual allegations are not required, a plaintiff must still provide more than labels, conclusions, or a "formulaic recitation of the elements of a cause of action")). A court should only grant a Rule 12(b)(6) motion if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable actual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

### A. Burke's Claims Under Section 1983

Defendants Punturi and VitalCore both argue that Burke's claims should be dismissed because he failed to plead facts sufficient to establish Defendants' "direct [] involvement" in the alleged misconduct. Dkt. 19 at 3; Dkt. 32 at 4. Burke responds that Punturi is liable as a

5

"supervisory" defendant, Dkt. 22 at 10, and that VitalCore is liable under the principles of "municipal liability" articulated in *Monell v. Dep't of Social Services*, 436 U.S. 658, 691–94 (1978). I will address the Defendants' arguments separately.

### i. Punturi's Liability as a Supervisor Under Section 1983.

Burke alleges that Punturi is liable under Section 1983 because Punturi was aware of and deliberately indifferent to his injuries. Dkt. 22 at 11. His argument is based on three allegations: 1) Burke filed grievances about the lack of medical care, but nothing was done to resolve the issues, Compl. ¶ 21; 2) Burke has "notified everyone at Greensville Correctional Center that he needs these surgical interventions and has these medical issues, but nothing has been done," *id.* ¶ 62; and 3) Prison wardens' duties and responsibilities generally include "ensuring that the correctional facility is safe for inmates, determining training standards for the correctional officers and other staff including medical staff, and providing appropriate medical care for inmates…," *id.* ¶ 2. These allegations are insufficient to support a claim for supervisory liability against Punturi.

Burke must establish three elements to state a supervisory liability claim under §1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is

6

widespread, or at least been used on several different occasions and that the conduct poses an unreasonable risk of harm of constitutional injury. *Id.*

"The plaintiff ... assumes a heavy burden of proof in supervisory liability cases," for "[h]e not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (citation omitted). "[H]e cannot satisfy [this] burden of proof by pointing to a single incident or isolated incidents." *Id.* Rather "deliberate indifference" requires a showing of continued inaction in the face of documented widespread abuses. *See Dowdy v. Pamunkey Reg. Jail Auth.*, 2014 WL 2002227 (E.D. Va. May 15, 2024). Burke's allegations do not meet this standard. Burke fails to allege that Punturi had actual or constructive knowledge of the unconstitutional conduct. The fact that Burke "has properly presented grievances for all of [his] medical issues," Compl. ¶ 21, is not sufficient to establish Punturi's knowledge. Without evidence that, at a minimum, Punturi was aware of the grievances, Burke cannot show "deliberate indifference." *See Riddick v. Oliver*, 2021 WL 357354, at *4, n.8 (E.D. Va. Feb. 2, 2021) (finding that a claim against a prison warden because the plaintiff failed to "allege facts specifically demonstrating that [the] [w]arden was personally involved in" denying the plaintiff's grievance); *see also, Langley v. Huntington Police Dep't.*, 2018 WL 652866, at *18 (S.D. W.Va. Jan. 9, 2018) (holding that plaintiff alleged sufficient facts to state a claim for supervisory liability against a prison nurse who denied his grievance). Similarly, Burke's nonspecific allegations that he "notified everyone at Greensville Correctional Center" about his medical issues, Compl. at ¶ 62, and the general "duties and responsibilities" of prison wardens, *id.* ¶ 2, are also not sufficient to establish Punturi's knowledge. *See Ouzts v. Cummins*,

825 F.2d 1276, 1277 (8th Cir. 1987) ("[A] warden's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement."). Nor are they sufficiently detailed to satisfy Rule 8's notice pleading requirement. *Bell Atl. Corp.*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."). In sum, absent specific allegations that Punturi was personally involved in the unconstitutional conduct that led to Burke's injuries, the claims against Punturi must be dismissed.

### ii. VitalCore's Liability Under Section 1983

Burke argues that VitalCore is liable under *Monell* because "[t]he Complaint contains "sufficient facts to allow this Court to draw the reasonable inference that Defendant has either (1) failed to train its agents/employees, or (2) has a 'persistent and widespread' practice of unconstitutional conduct demonstrated through its agents/employees." Burke's argument relies on four allegations:

> (1) VitalCore is a medical contractor for the Virginia Department of Corrections ("VDOC") that provides services at both Coffeewood Correctional Center and Greensville Correctional Center; (2) Defendant VitalCore is responsible for training the medical providers; (3) VitalCore employed Defendant Mann, and Defendant Taslimi, and currently employs Defendant[s] Gore, [] Mann, and [] Luong at Greensville Correctional Center; (4) numerous staff members, including the previously mentioned defendants, across two different facilities, for different medical issue, employed by and/or trained by Defendant VitalCore, have continually acted with deliberate indifference toward Plaintiff's various medical needs.

Dkt. 35 at 11 (citing Dkt. 1 ¶¶ 3–8, 17–86). I find that these allegations are insufficient to establish VitalCore's liability under Section 1983.

First, Burke has not adequately alleged that VitalCore has failed to train its agents/employees. To establish liability on failure to train claim under § 1983, a plaintiff must plead and prove that: (1) the subordinates violated the plaintiff's constitutional or statutory

8

rights; (2) the supervisor failed to properly train the subordinates, illustrating a "deliberate indifference" to the rights of the persons with whom the subordinates come into contact; and (3) this failure to train caused the subordinates to violate the plaintiff's rights. *Brown v. Mitchell*, 308 F. Supp. 2d 682, 701 (E.D. Va. 2004) (citing *Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000)).

A failure to train claim rises to the level of a § 1983 violation when the corporation's failure to train its employees amounts to "deliberate indifference" to the rights of the person affected by the untrained employee. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Ordinarily, such deliberate indifference requires a plaintiff to establish "[a] pattern of similar constitutional violations by untrained employees." *Id.* at 62. Deliberate indifference is a "stringent standard," and a corporation's culpability is often "at its most tenuous" when a claim turns on failure to train. *See id.* at 61. While deliberate indifference is not a heightened pleading standard, *Booker v. City of Lynchburg*, 2020 WL 8513807, at *6 (W.D. Va. Nov. 12, 2020), the plaintiff must point out "a specific deficiency" in training, "rather than general laxness or ineffectiveness in training." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987) (internal citations omitted). *See Valentine v. PrimeCare Med., Inc.*, No. CV JKB-22-2446, 2023 WL 6541564, at *8 (D. Md. Oct. 6, 2023) (requiring plaintiffs "to identify a specific omission and awareness on the part of the entity of the omission and the risks it posed; in other words, facts showing deliberation on the part of the Defendant."). The corporation will only be liable if "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers…can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989) (emphasis added).

9

Burke's allegations do not satisfy this standard. Burke does not allege any "specific deficienc[ies]" in training. To the contrary, his only allegation related to training is that "VitalCore is responsible for training the medical providers" at Coffeewood and Greensville. Dkt. 1 ¶ 3. This is the type of general "'label[] and conclusion' that *Twombly* says 'will not do.'" *Dallas v. Craft*, 2022 WL 2079312, at *23 (E.D. Va. June 9, 2022) (finding that general allegations that a defendant "failed to effectively, train, supervise, and control their employees regarding access to adequate medical care" was insufficient to establish liability for failure to train). Burke argues that the repeated failure of VitalCore's providers to address his various medical issues demonstrates a "pattern of similar constitutional violations" sufficient to show "deliberate indifference." Dkt. 35 at 11–12. But Burke has not alleged that anyone else incarcerated at Coffewood or Greenville has been denied medical treatment or that a lack of medical care is common across facilities administered by VitalCore. At best, he has alleged that VitalCore did not train those persons responsible for Burke's care how to deal with his particular situation. "If that were sufficient to state a claim for [corporate] liability, it would functionally expose [VitalCore] to *respondeat superior* liability, which has been explicitly foreclosed by *Monell*." *Lee v. City of Richmond, Va.*, 2013 WL 1155590, at *7 (E.D. Va. Mar. 19, 2013).

Second, Burke does not allege facts sufficient to establish that VitalCore has a "persistent and widespread" practice of unconstitutional conduct. Liability may arise under *Monell* "if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (quoting *Monell*, 436 U.S. at 691. "A corporation is not liable for mere 'isolated incidents of unconstitutional conduct by subordinate employees ... Rather, there must be numerous particular instances of unconstitutional conduct in order to establish a custom or practice.'" *Smith v. Ray*,

10

409 F. App'x 641, 650 (4th Cir. 2011) (quoting *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003)). Here, as noted, Burke did not allege that inadequate medical care was common at the Coffeewood or Greenville facility or at any other VitalCore facility. He alleges only that specific VitalCore employees failed to provide him with adequate care. His isolated case is not sufficient to establish liability under *Monell*. For these reasons, the Section 1983 claims against VitalCore must be dismissed.

### B. Burke's Negligence and Medical Malpractice Claims

Additionally, Burke asserts claims for simple, gross and willful negligence against Defendants Punturi and VitalCore. Burke also asserts a claim for medical malpractice against VitalCore. Defendants move to dismiss. I find that the negligence claims against Defendant Punturi must be dismissed, because Burke has failed to allege facts sufficient to state a "plausible" claim. However, I find that Burke has sufficiently alleged that VitalCore is liable for the tortious conduct of its employees under the doctrine of *respondeat superior* and cannot be dismissed at this stage.

#### i. Burke Fails to Plead Negligence Claims Against Defendant Punturi

To succeed on a negligence claim, a plaintiff must demonstrate "the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." *Atrium Unit Owners Ass'n v. King*, 585 S.E.2d 545, 548 (Va. 2003). In Virginia, there are three levels of negligence,

> The first level, simple negligence, involves the failure to use the degree of care that an ordinarily prudent person would exercise under similar circumstances to avoid injury to another. The second level, gross negligence, is a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person. This requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness. The third level of negligent conduct is willful and wanton negligence. This conduct is defined as acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing

11

circumstances and conditions, that his conduct probably would cause injury to another.

*Riddick v. Watson*, 503 F. Supp. 3d 399, 424–25 (E.D. Va. 2020) (quoting *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918-19 (Va. 2004).

Burke's Complaint does not contain allegations that Punturi acted with gross, wanton and willful, or even simple negligence. Burke alleges that prison wardens are generally responsible for "ensuring that the correctional facility is safe for inmates….and providing medical care for inmates." Compl. ¶ 3. But this allegation is no more than a "naked assertion" which does not "permit the court to infer more than the mere possibility of misconduct" and therefore cannot support a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79. Moreover, Burke's general allegation does not show that Punturi had a "specific legal duty to Plaintiff" or that Punturi's purported breach of a legal duty proximately caused Burke's injuries. *Wall v. Looney*, 2014 WL 5591917, at *5 (W.D. Va. Nov. 3, 2014) (dismissing plaintiff's simple negligence claims based on a prison's warden's alleged "fail[ure] to investigate plaintiff's grievances," "disregard[] [for] inmates' complaints of excessive force,"  and "fail[ure] to ensure that use of force practices…were in accordance with VDOC guidelines"). Accordingly, the negligence claims against Punturi must be dismissed.

### ii. Burke Has Adequately Alleged Negligence and Medical Malpractice Claims Against Defendant VitalCore

VitalCore moves to dismiss Burke's negligence and medical malpractice claims on the ground that Burke's allegations are not sufficient to "identif[y] what, exactly VitalCore as a corporation did or failed to do that would give rise to any type of liability…." Dk. 32 at 5. While I agree Burke has not stated a plausible claim that VitalCore is *directly* liable for his injuries, I

find he has adequately alleged that VitalCore is *vicariously* liable for the purported negligence and malpractice of its employees.

In Virginia, an employer may be held liable "'for the tortious act of his employee[s] if the employee[s] [were] performing [their] employer's business and acting within the scope of [their] employment.'" *Id.* (quoting *Kensington Assocs. v. West*, 362 S.E.2d 900, 901 (Va. 1987)). Burke has alleged that VitalCore employed Defendant Mann, and Defendant Taslimi, and currently employs Defendants Gore, Mann, and Luong at Greensville Correctional Center ("Medical Defendants"). Compl. ¶¶ 3–8. He has also alleged that Medical Defendants were, to varying degrees, negligent in the provision of medical care. For example, Burke alleges: Defendant Mann ignored his "severe abdominal pain, bloating, and chest pain" for over a month, *id.* ¶¶ 21–25; Defendant Mann misrepresented the results of a CT scan, *id.* ¶¶ 35–36; Dr. Taslimi failed to inform him of his "weight-lifting restriction," *id.* ¶ 52; and, Defendant Mann, ignored Burke's "intense foot pain," *id.* ¶¶ 63–65. These actions, Burke asserts, have exacerbated his medical issues and caused him physical and emotional pain. *Id.* ¶¶ 80–86. Finally, at this stage, there are sufficient allegations in Burke's Complaint to infer that the Medical Defendants, who were employed to provide medical care in the Coffeewood and Greenville facilities, were acting within their scope of employment when they failed to provide adequate care. *Langford v. Joyner*, 62 F. 4th 122, 124 (4th Cir. 2023) (In reviewing a motion to dismiss, "[t]he district court must…draw all reasonable inferences in the plaintiff's favor."). Accordingly, Burke has sufficiently alleged that VitalCore is vicariously liable for the tortious conduct of its employees, and the negligence and medical malpractice claims cannot be dismissed at this time.[2]

---

[2] Burke's negligence claim against VitalCore is rooted in medical malpractice, which is defined by the Virginia Medical Malpractice Act as a "tort for personal injuries or wrongful death, based on healthcare or professional services rendered, or which should have been rendered, by a health

## Conclusion

For the reasons above, Defendant Punturi's motion to dismiss is **GRANTED.** Defendant VitalCore's motion to dismiss is **GRANTED in part** and **DENIED in part**.

Entered: August 7, 2024

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

---

care provider to a patient." Va. Code Ann. § 8.01–581.1. Under Virginia law, general negligence rooted in medical malpractice and medical malpractice claims are not separate causes of action. *Washington v. Brooks*, 2021 WL 4975268, *2 –*3. Accordingly, the Court addresses these claims together.